

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-13-00613-CV

Gary P. **LAWTON**, M.D., FACS,
Appellant

v.

Rachel **JOAQUIN**,
Appellee

From the 407th Judicial District Court, Bexar County, Texas
Trial Court No. 2012-CI-16544
Honorable David A. Canales, Judge Presiding

Opinion by:    Karen Angelini, Justice

Sitting:    Karen Angelini, Justice
Marialyn Barnard, Justice
Rebeca C. Martinez, Justice

Delivered and Filed:  February 26, 2014

REVERSED AND REMANDED

Gary P. Lawton, M.D., appeals an order denying his motion to dismiss a health care liability claim against him. We conclude the trial court abused its discretion when it denied Lawton's motion to dismiss, and therefore, reverse and remand.

### BACKGROUND

On October 12, 2010, Lawton performed surgery—an abdominoplasty ("tummy tuck") and panniculectomy—on Rachel Joaquin. Joaquin subsequently filed a healthcare liability claim

against Lawton, alleging she suffered from "fat necrosis" following the surgery.[1] Joaquin served Lawton with an expert report prepared by Edward P. Melmed, M.D., a plastic surgeon, as required by section 74.351 of the Texas Civil Practice and Remedies Code. Lawton objected to the adequacy of the report. The trial court sustained these objections and gave Joaquin a thirty-day extension to cure the deficiency. The expert prepared a supplemental report, which was timely served on Lawton. Thereafter, Lawton filed objections to the supplemental report and moved to dismiss Joaquin's healthcare liability claim with prejudice. The trial court overruled Lawton's objections and denied the motion to dismiss. Lawton appealed. On appeal, Lawton seeks a reversal of the trial court's order denying the motion to dismiss, and a remand to the trial court for a determination of statutory attorney's fees.

## STANDARD OF REVIEW

We review the trial court's order denying a motion to dismiss a healthcare liability claim for an abuse of discretion. *Bowie Memorial Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002); *Am. Transitional Care Ctrs. of Texas, Inc. v. Palacios*, 46 S.W.3d 873, 877 (Tex. 2001). A trial court abuses its discretion when it acts in an arbitrary or unreasonable manner without reference to guiding rules and principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985). The trial court's clear failure to analyze or apply the law correctly will constitute an abuse of discretion. *Walker v Packer*, 827 S.W.2d 833, 840 (Tex. 1992).

## DISCUSSION

When presented with a motion to dismiss a healthcare liability claim, the trial court must determine whether the expert report represents a good faith effort to comply with the statutory

---

[1] Necrosis is defined as "[t]he death of cells, tissues, or organs." TABERS CYCLOPEDIC MEDICAL DICTIONARY 1549 (21st ed. 2009).

definition of an expert report. *See Wright*, 79 S.W.3d at 52; *Palacios*, 46 S.W.3d at 878; *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(l) (West Supp. 2013). The statute defines an expert report as "a written report by an expert that provides a fair summary of the expert's opinions as of the date of the report regarding the applicable standards of care, the manner in which the care rendered by the physician . . . failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed." TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(r)(6) (West Supp. 2013).

In evaluating an expert report, the trial court looks only to the information within the four corners of the report and is prohibited from making any inferences. *Wright*, 79 S.W.3d at 52-53; *Palacios*, 46 S.W.3d at 878. Although the expert report need not marshal all the plaintiff's proof, it must include the expert's opinion on each of the three elements identified in the statute: standard of care, breach, and causal relationship. *Wright*, 79 S.W.3d at 52; *Palacios*, 46 S.W.3d at 878. The expert cannot merely state his conclusions about these elements in his report. *Wright*, 79 S.W.3d at 52; *Palacios*, 46 S.W.3d at 879. The expert must explain the basis of his statements to link his conclusions to the facts. *Wright*, 79 S.W.3d at 52 (citing *Earle v. Ratliff*, 998 S.W.2d 882, 890 (Tex.1999)). To constitute a good-faith effort to comply with the statutory definition, the expert's report must provide enough information to fulfill two purposes: (1) it must inform the defendant of the specific conduct the plaintiff has called into question, and (2) it must provide a basis for the trial court to conclude that the claims have merit. *Palacios*, 46 S.W.3d at 879. "A report that merely states the expert's conclusions about the standard of care, breach, and causation cannot fulfill these two purposes." *Id*.

On appeal, Lawton argues the trial court abused its discretion when it denied the motion to dismiss. Lawton focuses on two of the three required statutory elements: breach and causal relationship. According to Lawton, the expert's supplemental report is deficient because it fails to

set out (1) exactly what he did or failed to do that amounted to a failure to meet the applicable standard of care, and (2) the causal relationship between that failure and the injury, harm, or damages claimed by Joaquin. After reviewing both the initial expert report and the supplemental expert report, we agree with Lawton.

As previously mentioned, the trial court found the initial expert report to be deficient and, consistent with Chapter 74, provided Joaquin an opportunity to cure the deficiency. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(c) (West Supp. 2013). After the supplemental expert report was filed, Lawton filed additional objections and moved to dismiss with prejudice. In reviewing the trial court's decision to deny the motion to dismiss, we consider both the initial and the supplemental reports prepared by Dr. Melmed.

In his initial report, Dr. Melmed stated his opinions were based on the operative reports and progress notes. He stated he was very disturbed that Joaquin had to have hyperbaric oxygen treatment the day after surgery. According to Dr. Melmed, this treatment indicated there was a severe compromise in circulation immediately following Joaquin's surgery. Dr. Melmed identified two external factors that "can figure into" circulatory compromise, smoking and a metabolic disease such as diabetes. Dr. Melmed then noted that Joaquin's medical history showed that neither external factor applied to her. At the report's conclusion, Dr. Melmed stated: "I do not know what caused the failure of the blood supply from reading the operative reports . . . . I can only surmise that something must have occurred that was not recognized at the time of surgery, nor reflected in the operative or immediate progress notes."

In his supplemental report, Dr. Melmed stated his opinions were based on post-operative photographs and surgical records. According to Dr. Melmed, the post-operative photographs showed "a devastating compromise in the blood supply to the abdominal wall, ending upon with full thickness skin loss of a huge amount of skin," but "the surgical records, as dictated, make no

mention of any problems encountered during the procedure, or how the compromised circulation occurred." Dr. Melmed further stated: "The standard of care requires the surgeon to preserve a sufficient blood supply to the abdominal wall" and "a deviation from the [s]tandard of [c]are MUST have occurred during the performance of the abdominoplasty to have compromised the blood supply to the extent that such a large tissue loss occurred." In conclusion, Dr. Melmed stated "the major skin and tissue loss was caused by a major compromise of [] vascularity that occurred during the abdominoplasty."

Dr. Melmed's reports identify one standard of care: the requirement that a surgeon preserve a sufficient blood supply to the abdominal wall. However, neither report explains how a surgeon goes about preserving a sufficient blood supply to the patient's abdominal wall. And, neither report explains how Lawton in particular failed to preserve a sufficient blood supply to Joaquin's abdominal wall.

In defending the trial court's ruling, Joaquin argues that Dr. Melmed adequately described Lawton's breach of the standard of care in his reports. She points out that Dr. Melmed's reports ruled out, based on Joaquin's medical history, external factors that could have caused circulatory failure, namely smoking and a metabolic disease such as diabetes. He also indicated the photographic record showed "a devastating compromise in the blood supply to the abdominal wall." Based on this information, Dr. Melmed concluded "[t]he cause of the circulatory failure must therefore have come from something that happened during surgery." Citing these statements, Joaquin asserts the reports adequately explained Lawton's breach of the standard of care. We disagree. Dr. Melmed's reports fail to link the circulatory failure to any specific action on Lawton's part. Absent such specific information about Lawton's conduct, Dr. Melmed's opinion that "a deviation from the [s]tandard of [c]are MUST have occurred" is conclusory and fails to establish the required breach of the standard of care.

Joaquin also argues that Dr. Melmed was not required to explain how Lawton failed to preserve a sufficient blood supply to the abdominal wall, citing *Roark v. Allen*, 633 S.W.2d 804, 809-10 (Tex. 1982). Again, we disagree. *Roark* addresses pleading requirements, not expert report requirements, and thus has no application to the present case. *See id.*

Dr. Melmed's reports contained no specific information about how Lawton breached the standard of care or about what he should have done differently. We, therefore, hold that the reports failed to establish one of the required statutory elements: that Lawton breached the standard of care. *See Jernigan v. Langley*, 195 S.W.3d 91, 94 (Tex. 2006) (agreeing that expert reports were deficient because they failed to address "how Dr. Jernigan breached the standard or how his unstated breach of duty caused [the patient's] death with sufficient specificity for the trial court, and Jernigan, to determine that the allegations against him had any merit."); *Palacios*, 46 S.W.3d at 879 ("Whether a defendant breached his or her duty to a patient cannot be determined absent specific information about what the defendant should have done differently."); *Longino v. Crosswhite*, 183 S.W.3d 913, 917 (Tex. App.—Texarkana 2006, no pet.) (concluding that an expert report was deficient when it contained no specific information about how the defendant breached the standard of care).

Additionally, an expert's report must address another statutory element: the causal relationship between the breach and the injury, harm, or damages. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(r)(6). To establish a causal relationship in the present case, Dr. Melmed was required to "explain the basis of his statements to link his conclusions to the facts." *See Wright*, 79 S.W.3d at 52. Although Dr. Melmed concluded that the injury—"major skin and tissue loss"— was caused by "a major compromise of [] vascularity that occurred during the abdominoplasty," there is no information in the reports linking this "major compromise of [] vascularity" to Lawton's conduct during Joaquin's surgery. In fact, in the supplemental report, Dr. Melmed states that "the

surgical records, as dictated, make no mention of any problems encountered during the procedure, or how the compromised circulation occurred." Therefore, Dr. Melmed's reports fail to establish yet another required statutory element: causation. *Hutchinson v. Montemayor*, 144 S.W.3d 614, 618 (Tex. App.—San Antonio 2004, no pet.) (holding the trial court properly dismissed a healthcare liability claim when the expert's report did not set forth facts or explain the medical basis for her opinion that the doctor's breaches caused the patient's injury); *Lopez v. Montemayor*, 131 S.W.3d 54, 60 (Tex. App.—San Antonio 2003, pet. denied) (holding that an expert's opinion was conclusory and did not fulfill statutory causation requirements when it did not provide information linking the doctor's actions to the patient's death).

We conclude the information in Dr. Melmed's reports (1) failed to inform Lawton of the specific conduct called into question, and (2) failed to provide a basis for the trial court to conclude that Joaquin's claim had merit. Therefore, the trial court abused its discretion denying the motion to dismiss.

## CONCLUSION

We reverse the trial court's order denying the motion to dismiss, and remand this case to the trial court for (1) entry of an order granting the motion to dismiss with prejudice, and (2) other proceedings consistent with our opinion.

Karen Angelini, Justice